Kristen L. Nelson (SBN 269318)
knelson@hechtpartners.com
**HECHT PARTNERS LLP**
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Phone: (646) 490-2408

Attorneys for Plaintiff-Relator,
RELATOR LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**UNITED STATES OF AMERICA**,

Plaintiff,

*ex rel.* **RELATOR LLC**, a California limited liability company,

Relator,

v.

**STEVEN SUNSHINE**, an individual; **JON CHRISTY**, an individual; and **THE SHADY CANYON GOLF CLUB, INC.**, a California nonprofit corporation; and DOES 1-10,

Defendants.

Case No.: 8:23-cv-00134-JVS-ADS

Assigned to: The Hon. James V. Selna

**PLAINTIFF RELATOR LLC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Action Filed: January 23, 2023

Hearing Date: June 30, 2025
Time: 1:30 p.m.

## TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ........ 1

II. STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT ........ 3

III. FACTUAL BACKGROUND ........ 3

A. The PPP Program and Eligibility Restrictions ........ 3

1. The PPP Loan Application Process ........ 5

2. The PPP Loan Forgiveness Process ........ 6

B. The Impermissible Country Club PPP Loan ........ 7

C. Fraudulent Representations on the Loan Application ........ 8

D. Fraudulent Use and Forgiveness of Loan Proceeds ........ 9

IV. LEGAL ARGUMENT ........ 9

A. The Complaint Satisfies Both Rule 9(b) and Rule 12(b)(6) ........ 9

1. The Complaint Satisfies Rule 9(b)'s Heightened Standard for Pleading Fraud ........ 10

a) Industry Eligibility ........ 12

b) Economic Need ........ 12

c) Unauthorized Expenses ........ 13

2. The Complaint Adequately Alleges Scienter ........ 13

B. The Public Disclosure Bar Does Not Apply Because the Allegations Are Not Substantially the Same as Any Prior Public Disclosure ........ 15

1. The Information Underlying the Complaint Was Not Publicly Disclosed in a Manner that Triggers the Bar ........ 15

V. CONCLUSION ........ 21

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 10, 13

*Burgess v. Premier Corp.*,
727 F.2d 826 (9th Cir. 1984) ........ 15

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir.1997) ........ 10

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
563 U.S. 401 (2011) ........ 17, 18, 20

*U.S. ex. rel. Silingo v. WellPoint, Inc.*,
904 F.3d 667 (9th Cir. 2018) ........ 13

*U.S. ex rel. Craig v. Hawthorne Mach. Co.*,
2024 WL 4294878 (S.D. Cal. Sept. 25, 2024) ........ 14

*U.S. ex rel. Found. Aiding Elderly v. Horizon W., Inc.*,
275 F.3d 1189 (9th Cir. 2001) ........ 16

*U.S. ex rel. Found. Aiding The Elderly v. Horizon W.*,
265 F.3d 1011 (9th Cir. 2001) ........ 16

*U.S. ex rel. Hendow v. Univ. of Phoenix*,
461 F.3d 1166 (9th Cir. 2006) ........ 10, 11

*U.S. ex rel. Hochman v. Nackman*,
145 F.3d 1069 (9th Cir. 1998) ........ 13

*U.S. ex rel. Relator, LLC v. Kootstra et al*,
2024 WL 3666470 (E.D. Cal. Aug. 6, 2024) ........ 16

*U.S. ex rel. Mateski v. Raytheon Co.*,
816 F.3d 565 (9th Cir. 2016) .......... 16, 20

*U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*,
14 F.3d 645 (D.C. Cir. 1994) .......... 16

*United States ex rel. Hopper v. Anton*,
91 F.3d 1261 (9th Cir. 1996) .......... 14

*United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*,
2019 WL 3282619 (C.D. Cal. July 16, 2019) .......... 17, 18

*United States ex rel. Jamison v. McKesson Corp.*,
649 F.3d 322 (5th Cir. 2011) .......... 19

*United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*,
2025 WL 939890 (5th Cir. Mar. 28, 2025) .......... 14

*United States ex rel. Nunnally v. West Calcasieu Cameron Hosp.*,
519 F. App'x 890 (5th Cir. 2013) .......... 11

*United States ex rel. Relator LLC v. Riviera Fin. LLC*,
2025 WL 1421265 (C.D. Cal. Feb. 6, 2025) .......... 9, 19

*United States ex rel. Relator LLC v. Umansky*,
2025 WL 873015 (C.D. Cal. Jan. 14, 2025) .......... 9, 11, 14, 19

*United States ex rel. Schutte v. SuperValu Inc.*,
598 U.S. 739 (2023) .......... 13

*United States ex rel. Solis v. Millennium Pharmaceuticals, Inc.*,
885 F.3d 623 (9th Cir. 2018) .......... 15

*United States v. 1850 Bryant Land LLC*,
2023 WL 4297585 (N.D. Cal. Jun. 30, 2023) .......... 14

*United States v. Neil*,
2025 WL 1127842 (C.D. Cal. Mar. 17, 2025) .......... 9, 11, 14, 19

**Statutes**

15 U.S.C. § 645 .......... 6

18 U.S.C. § 1014 .......... 6
18 U.S.C. § 1001 .......... 6
18 U.S.C. § 3571 .......... 6
31 U.S.C. § 3729(b) .......... 13, 14
31 U.S.C. § 3730(e)(4) .......... *passim*
31 U.S.C. §§ 3729-33 .......... 1
Coronavirus Aid, Relief, and Economic Security Act,
PL 116-136, March 27, 2020, 134 Stat 281 .......... 1, 4

**Rules**

Fed. R. Civ. P. 9(b) .......... 3, 13
Fed. R. Civ. P. 12(b)(6) .......... 9, 10

**Regulations**

13 C.F.R. §§ 113, 120, and 121 .......... 4
13 C.F.R. § 120.110 .......... 4, 12

**Other Authorities**

Business Loan Program Temporary Changes, Paycheck Protection Program,
85 Fed. Reg. 20811 .......... 3, 6
Business Loan Program Temporary Changes, Paycheck Protection Program—Requirements—
Loan Forgiveness,
85 Fed. Reg. 33004 .......... 6
Business Loan Program Temporary Changes, Paycheck Protection Program—Revisions to Loan
Forgiveness and Loan Review Procedures Interim Final Rules,
85 Fed. Reg. 38304 .......... 6, 7
Business Loan Programs,
16 Fed. Reg. 3235 .......... 4

## I. PRELIMINARY STATEMENT

This case arises out of a fraudulent scheme by Defendants to obtain and misappropriate funds from the United States government through the Paycheck Protection Program ("PPP"), a program intended to provide emergency financial relief to eligible small businesses during the COVID-19 pandemic. Despite their ineligibility, Defendants knowingly applied for and received almost $1.7 million in PPP loan funds, then misrepresented their eligibility and use of funds to secure forgiveness of 100% of that loan—all in violation of the False Claims Act, 31 U.S.C. §§3729-33 ("FCA"). But Defendant Shady Canyon Golf Club, Inc. (the "Country Club Borrower") was ineligible to receive the loan for several reasons, including that it owned and operated (and applied for the loan on behalf of) a private, members only country club Shady Canyon Golf Club (the "Country Club") – rendering it ineligible to receive any SBA loans at all under clear SBA rules – and did not have economic necessity for the loan in the first place. Defendants nevertheless misrepresented the nature of the business and need for the loan.

Plaintiff Relator LLC ("Relator") brought this action on behalf of the United State under the FCA to recover damages and penalties resulting from these fraudulent applications for, and unlawful receipt of, Defendants' receipt of a U.S. Small Business Association ("SBA") loan in the amount of $1,689,200.00. None of that loan was paid back. Rather, Defendant further certified that it was eligible for loan forgiveness. That certification was false for the same reason that the initial application was false, namely that it was never authorized to receive the funds and therefore could not have used the funds for an authorized purpose under the PPP as required to receive loan forgiveness.

The false certifications on both the initial and forgiveness applications were made with at least a reckless disregard for the truth. Under governing federal regulations enacted before the PPP program (which the SBA made clear applied to the PPP), a private club that excludes the public and limits access for reasons other than capacity – here, exorbitant fees for the wealthy individuals who can afford a membership – was flat out ineligible for any "SBA business loans" at all, much less a PPP loan and subsequent forgiveness. Yet the sophisticated businessmen who were chosen by the Country Club's members to operate the private club certified as to their

understanding of the relevant form, that the business was eligible, and that the funds would only be used for authorized purposes.

Moreover, the Complaint alleges that the economic necessity certification was false because the Country Club continued to extract membership fees from its many members during the pandemic. While, for example, a restaurant serving the public relies exclusively on its revenue from diners and therefore lost revenue as potential customers were forced to abstain from dining out, the Country Club Borrower had adequate sources of alternative revenue – membership fees – to blunt any impact from the COVID-19 pandemic. Accordingly, the Complaint plausibly alleges that there was never any economic necessity for the PPP loan in the first place.

Defendants contend that this *qui tam* action is based on publicly available information. While that is partially true – the information about the PPP Loan itself is publicly available – Plaintiff had to synthesize a host of information, including information that is not deemed to be publicly available under the FCA. Defendants fail to identify how the allegedly publicly available information fits into one of the FCA's three enumerated categories of information deemed ineligible for an FCA claim, let alone how such information plausibly fits into the plain statutory text. Accordingly, the public-disclosure bar does not apply.

Defendants' other arguments – that fraud and scienter were not adequately pleaded – simply ignores the numerous facts alleged in the Complaint. And while Defendants complain about Plaintiff's efforts at discovering and prosecuting (via *qui tam* actions) FCA violations, the simple fact is that the PPP relied on borrowers to make accurate representations in their applications. This has, of course, led to a host of fraud. Indeed, the SBA estimates that there was over $64 billion in PPP fraud due to fraudulent applications.[1] That FCA cases are superficially similar is hardly surprising given the nature of the case: a single cause of action directed towards a discrete loan transaction.

---

[1] *See, e.g.*, *How the FBI is Combatting COVID-19 Related Fraud*, FBI.GOV (Jan. 12, 2024), https://www.fbi.gov/contact-us/field-offices/springfield/news/how-the-fbi-is-combatting-covid-19-related-fraud#:~:text=The%20theft%20was%20massive%20in,than%20%24100%20billion%20in%20fraud.

In any event, fraud and scienter are more than adequately pleaded. The Complaint clearly lays out the who, what, when, where, and how of all aspects of the fraud. The Complaint also sets forth facts sufficient to support an inference that Defendants acted at least recklessly – indeed, Defendants certified that they read and were familiar with the relevant rules and the PPP loan program provided for little oversight – easily satisfying scienter at the pleading stage.

The Motion should be denied.

## II. STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

1. Whether the Complaint – which alleges the who, what, where, when, and how of the alleged fraud – contains sufficient particularized factual allegations to satisfy Federal Rule of Civil Procedure 9(b)?

2. Whether the Complaint – which alleges that Defendant was a sophisticated entities that made multiple certifications concerning the borrower's eligibility for loans and whether the loans were appropriately used – adequately alleges scienter under Federal Rule of Civil Procedure 9(b) and case law interpreting fraud generally and the FCA specifically?

3. Whether the Complaint is barred by the FCA's public-disclosure bar, 31 U.S.C. § 3730(e)(4), where material facts concerning the nature of the business, its financial health, and its resulting ineligibility for a PPP loan were not publicly disclosed as that term is defined in the FCA?

## III. FACTUAL BACKGROUND

### A. The PPP Program and Eligibility Restrictions

The PPP was enacted by Congress on March 27, 2020, as part of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act to support businesses facing economic uncertainty caused by the COVID-19 pandemic. *See* Pub. L. 116-136, § 1102, 134 Stat. 281, 286-94 (2020). Section 1102 of CARES authorized the SBA to guarantee loans to cover payroll and specific business-related expenses during the crisis. *Id.* The loans were designed to help small businesses that struggled to stay in business due to the COVID-19 pandemic and resulting government restrictions maintain payroll and pay employees. *See* Business Loan Program

Temporary Changes, Paycheck Protection Program, 85 Fed. Reg. 20811, 20812, Apr. 15, 2020 (hereinafter, "85 Fed. Reg. 20811") (the program was intended to address the "dramatic decrease in economic activity as the public avoid malls, retail stores, and other businesses"). Eligible businesses were able to obtain low interest loans (most of which were ultimately forgiven) of up to 2.5 times their average monthly payroll costs for the prior two years. The funds were authorized to be used for employee compensation, rent, mortgage, and other specified purposes.

Under SBA guidance, several categories of businesses were explicitly prohibited from participating, including "private clubs and businesses which limit the number of memberships for reasons other than capacity." Compl. ¶ 30. The eligibility restrictions were designed to ensure that PPP funds supported only those entities with a legitimate and urgent economic need, rather than subsidizing exclusive, private enterprises that limited public access or demonstrated financial resilience. *Id.* ¶¶ 5-6. This restriction on private clubs receiving SBA loans (of any type) is codified in 13 C.F.R. § 120.110 and was first enacted in January 1996. *See* Business Loan Programs, 16 Fed. Reg. 3235 (Jan. 31, 1996). The SBA published interim rules April 2, 2020, as part of the SBA's First PPP Interim Final Rule announcing the implementation of the program, and additional interim final rules on April 3, 2020, April 14, 2020, April 28, 2020, and January 6, 2021. *Id.* ¶ 43. The January 6 interim final rule provided Clarification Regarding Eligible Businesses, citing to 13 C.F.R. Parts 113, 120, and 121, making clear that "a business is not eligible for a PPP loan if it is a type of business concern (or would be, if the entity were a business concern) described in 13 C.F.R. 120.110" unless specifically authorized by the SBA's rules and the CARES Act. Similarly, the SBA's Office of Financial Assistance, Lender and Development Company Loan Programs, SOP 50 105(B) again states that "[p]rivate clubs" are not eligible and cites to 13 C.F.R. 120.110. In other words, ***private clubs were never eligible to receive any SBA loans at all, much less any SBA-issued PPP loans*** (notwithstanding the date of issuance of interim rules), and the SBA's interim rules merely reaffirmed and clarified that ***existing*** prohibition. *Id.* ¶¶ 42-45.

### 1. The PPP Loan Application Process

In order to obtain a PPP loan, an applying business was required to submit a PPP loan application (SBA Form 2483) to an authorized lender. Compl. ¶ 28. As part of that application process, a business – acting through its authorized representative – was required to make several certifications, including without limitation:

- "I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them" (the Understanding Certification);
- "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Corona virus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)" (the "Eligibility Certification");
- "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule" (the "Use of Proceeds Certification");
- "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant" (the "Economic Necessity Certification");
- "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud" (the "Worker Retention and Payroll Certification"); and

- "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000" (the "No False Statements Certification").

*Id.* ¶¶ 31-37. Lenders were entitled "to rely on certifications of the borrower in order to determine eligibility of the borrower . . . and specified documents provided by the borrower to determine qualifying loan amount and eligibility for loan forgiveness." 85 Fed. Reg. 20811, 20812. After the lender processed and approved the application (relying on the certifications made by the business), the lender submitted a Form 2483 to the SBA certifying that the applying business made the required certifications. Compl. ¶¶ 30, 38. Accordingly, any false certifications submitted to the SBA were the result of false certifications by the applying business.

**2. The PPP Loan Forgiveness Process**

Section 1106(b) of the CARES Act provides that, subject to several important limitations, borrowers shall be eligible for forgiveness of their PPP loan in an amount equal to eligible payroll and non-payroll expenses incurred during the covered period. See Business Loan Program Temporary Changes, Paycheck Protection Program—Requirements—Loan Forgiveness, 85 Fed. Reg. 33004, 33004, Jun. 1, 2020. At least 60% of the PPP loan proceeds must have been used for payroll costs for eligible borrowers "for the full amount of the PPP loan to be eligible for forgiveness." Business Loan Program Temporary Changes, Paycheck Protection Program—Revisions to Loan Forgiveness and Loan Review Procedures Interim Final Rules, 85 Fed. Reg. 38304, 38306, Jun. 26, 2020.

To receive loan forgiveness, a borrower must have completed and submitted the Loan Forgiveness Application (SBA Form 3508, 3508EZ, or lender equivalent). *Id.* "Providing an accurate calculation of the loan forgiveness amount is the responsibility of the borrower, and the borrower attests to the accuracy of its reported information and calculations on the Loan Forgiveness Application Form." *Id.* As with the initial application, lenders were entitled to rely on borrower representations. A borrower would not receive forgiveness without submitting all required certifications of eligibility and use of funds to the lender. *Id.*; Compl. ¶¶ 39-41.

**B. The Impermissible Country Club PPP Loan**

The Country Club Borrower is the owner and operator of the Country Club, an exclusive and members-only country club in Irvine, California. Compl. ¶ 3. The Country Club is a private club that is not open to members of the public. *Id.* ¶ 4. Moreover, membership is limited for many reasons, none of which have to do with the capacity of the club. *Id.* During the pandemic, the Country Club continued to receive membership and other dues from its members from which the club derives its revenue. *Id.* ¶ 9.

Early in the life of the PPP, the Country Club Borrower applied for and received a PPP loan for $1,689,200.00 (the "PPP Loan"). *Id.* ¶ 22. The Country Club Borrower claimed 160 employees, reflecting an average annual salary for its claimed employees of $50,676.00. *Id.* ¶ 22. The loan was facilitated by the Commercial Bank of California. *Id.* ¶ 52. At the time of the application, the Country Club Borrower was ineligible for PPP loans – or any SBA loans of any type – due to the nature of their business as a club that restricted access for reasons other than capacity. Indeed, that is the point of an exclusive, members-only country club such as Shady Canyon: to keep out the public and preserve the use of the facilities to paying members.

Defendant Steven Sunshine was and is the CEO of the Country Club Borrower. *Id.* ¶ 19. Defendant Jon Christy was and is the CFO of the Country Club Borrower. *Id.* ¶ 20. The Country Club's members come from the sophisticated and elite of Irvine and the surrounding area and presumably chose the CEO and CFO, respectively, for their ability to successfully manage the affairs of the Country Club (e.g., revenue, employee relations, zoning and land use, and other legal and business issues). *Id.* ¶¶ 7-8. In order for the Country Club Borrower to obtain the PPP

Loan, they would have had to sign or authorize the PPP Loan paperwork, including each of the certifications. *Id.* ¶¶ 45-46. Similarly, they would have done the same for the PPP Loan forgiveness paperwork and associated certifications. *Id.* ¶¶ 6, 9, 39.

### C. Fraudulent Representations on the Loan Application

The Country Club Borrower (through its CEO and CFO) falsely certified that it met the PPP eligibility criteria, knowing that they were ineligible due to their status as a club that restricts access for reasons other than capacity. *Id.* ¶¶ 6, 10-12, 47. Defendants misrepresented the nature of the business and concealed their ineligibility to circumvent the SBA's rules *Id.* ¶¶ 6-8, 46.

At the time of the application, it was well-established that private clubs such as the Country Club were ineligible to receive any SBA loans of any type, much less a PPP loan. *Id.* ¶¶ 43-44. The CEO understood or should have understood the express eligibility limitations but moved forward with the application regardless. *Id.* ¶ 8. In any event, Defendants certified as to their understanding of the relevant rules, that the borrowers were eligible, and that the applications did not contain false statements. Those three certifications cannot be true at the same time, and accordingly the Eligibility Certification was false. *Id.* ¶ 45-47.

Moreover, Defendants falsely certified the necessity of the loan. There is zero indication that the PPP Loan was "necessary to support the ongoing operations of the" Lender Defendants, much less due to the "[c]urrent economic uncertainty." *Id.* ¶¶ 9, 49. Private, exclusive clubs such as the Country Club continued to receive membership and other dues from their paying members during the pandemic, and "every indication" is that Defendants' business continued to have positive revenue during the pandemic. *Id.* ¶ 49. Indeed, membership dues were not diminished as a result of the pandemic and dues were fully paid with minimal (if any) delinquencies. *Id.* ¶ 9. Accordingly, the Economic Necessity Certification was false. *Id.*

Additionally, Defendants certified that the funds would be used for eligible purposes. But because they were not authorized to obtain the funds in the first place, there were no authorized purposes on which to spend the funds. *Id.* ¶ 47. Accordingly, the Worker Retention and Payroll Certification and Use of Proceeds Certification were each false.

### D. Fraudulent Use and Forgiveness of Loan Proceeds

The Country Club Borrower applied for and received forgiveness for the full amount of the PPP Loan (plus accrued interest). *Id.* ¶¶ 6, 22; ECF No. 37, Ex. A.

This forgiveness was also obtained through a false certification. Specifically, Defendants certified that the full loan amount had been used for authorized purposes, such as payroll, rent, or utilities, but no purpose could have been authorized because the Country Club Borrower was ineligible to receive the funds in the first place. *Id.* ¶¶ 9, 48. This misrepresentation mirrored that in the initial application concerning the use of the funds. *Id.* ¶¶ 45-48. As a result, the government not only extended the loan under false pretenses but ultimately suffered financial harm by forgiving them based on fabricated claims of compliance.

The actions of Defendants demonstrate actual knowledge, deliberate ignorance, or reckless disregard of the truth. Businesses such as the Country Club Borrower and the Country Club operate through their executive officers. The CEO and CFO, respectively, of these entities operate in a highly regulated environment, with access to legal and financial professionals, and therefore either knew or consciously avoided knowing that the enterprise were not eligible under governing SBA rules and PPP guidelines. *Id.* ¶¶ 7-8. Their business experience and involvement in the application and certification processes confirm that they acted with the intent to deceive the SBA and obtain funds to which they were not entitled. *Id.* ¶¶ 6-8, 45, 50.

## IV. LEGAL ARGUMENT[2]

### A. The Complaint Satisfies Both Rule 9(b) and Rule 12(b)(6)

Defendants contend that the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because (1) fraud was not plead with particularity

---

[2] Defendants note that two of Plaintiff's other cases against other unauthorized recipients of PPP loans were dismissed. MTD *passim*. But Plaintiff's efforts to date have assisted in the recovery of over $7 million in taxpayer money that had been fraudulently misappropriated by persons and entities like Defendants under the PPP. *See e.g.*, U.S. Dept. of Justice, Press Release, "Southern California Dental Offices and Former Owners Pay $6.3M to Resolve False Claims Act Allegations Relating to Improper Paycheck Protection Program" (Aug. 8, 2024), https://www.justice.gov/opa/pr/southern-california-dental-offices-and-former-owners-pay-63m-resolve-false-claims-act ($6.3 million paid to United States to resolve allegations of knowing violations of the False Claims Act in connection with several improper loans and also "resol[ved]

under Rule 9(b) and (2) scienter was not plead. Both contentions are incorrect. The Complaint more than adequately pleads the elements of an FCA violation and provides Defendants with ample notice of the alleged fraud.

To survive a motion under Rule 12(b)(6), a complaint must contain factual allegations sufficient to raise a right to relief above a speculative level. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). The facts alleged must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Here, the Complaint clearly alleges that Defendants knowingly submitted false certifications in order to obtain PPP funds, falsely attesting to both eligibility and economic necessity. *See* Compl. ¶¶ 6-9, 45–51. These allegations align with the FCA's statutory elements: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due. *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006).

**1. The Complaint Satisfies Rule 9(b)'s Heightened Standard for Pleading Fraud**

Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud," including the "the who, what, when, where, and how" of the misconduct charged. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997). However, the rule does not require a relator to plead ***every detail*** of the fraudulent transaction at the outset, especially where key facts are peculiarly within the Defendants' knowledge.

---

claims brought under the *qui tam* or whistleblower provisions of the [FCA] by Relator LLC."); U.S. Dept. of Justice, Press Release, "California Businessman and His Companies Resolve False Claims Act Allegations Relating to Improper Paycheck Protection Program Loans" (Sept. 12, 2024), https://www.justice.gov/opa/pr/california-businessman-and-his-companies-resolve-false-claims-act-allegations-relating. Plaintiff has voluntarily dismissed *qui tam* actions where the government's investigation revealed no wrongdoing.

Moreover, Defendants fail to note that several of Plaintiff's *qui tam* cases have survived a motion to dismiss or motion for judgment on the pleadings based on the very same arguments raised by Defendants in their MTD. *United States ex rel. Relator LLC v. Riviera Fin. LLC*, 2025 WL 1421265 (C.D. Cal. Feb. 6, 2025) (denying motion for judgment on the pleadings); *United States v. Neil*, 2025 WL 1127842 (C.D. Cal. Mar. 17, 2025) (denying motion to dismiss); *United States ex rel. Relator LLC v. Umansky*, 2025 WL 873015 (C.D. Cal. Jan. 14, 2025) (denying motion to dismiss as to borrower business). Those cases are discussed in more detail below.

Here, the Complaint easily meets that standard. It identifies:

- **Who**: the Country Club Borrower, along with its CEO Sunshine and CFO Christy, Compl. ¶¶ 6-7, 45;
- **What**: A knowingly false PPP loan application and forgiveness request attesting to eligibility, necessity, and authorized use of funds, *id.* ¶¶ 6-9, 45-51;
- **When**: Initial loan application submitted in April 2020, with forgiveness sought and obtained on November 3, 2020, *id.* ¶¶ 22;
- **Where**: Applications submitted to and processed by Commercial Bank of California and the SBA, *id.*; and
- **How**: Through written certifications and supporting documentation that misrepresented Defendants' eligibility and actual use of the funds, *id.* ¶¶ 6-9, 45-51.

Courts have consistently held that where, as here, a relator identifies the submission of specific false claims and the mechanisms by which they were approved, Rule 9(b) is satisfied. *See Hendow*, 461 F.3d at 1177-78; *United States ex rel. Nunnally v. West Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013); *Neil*, 2025 WL 1127842, at *2 (holding that FCA claim sufficiently plead where complaint alleged that defendants "falsely represented [borrower's] eligibility for a PPP loan"); *Umansky*, 2025 WL 873015, at *2-3 (same where borrower falsely certified it was in operation).

Defendants' argument that the Complaint is impermissible "group pleading" (MTD at 25-26) falls flat. Each Defendant is alleged to have engaged in the scheme – hardly surprising given the individual Defendants oversaw and ran the Country Club Borrower – but that does not "make it impossible to discern who is alleged to have done what. The Complaint is clear that, as the CEO and CFO of the Country Club Borrower and the Country Club, both Sunshine and Christy would have been the officials tasked with and responsible for whether and how to file PPP loan

and forgiveness applications and had the resources to see professional assistance if necessary. *See* Compl. ¶¶ 7-8, 19-20.[3]

**a) Industry Eligibility**

The Complaint clearly alleges that the Country Club is an exclusive, members-only club that is flatly prohibited from receiving any "SBA business loans," let alone any PPP loans. *Id.* ¶¶ 3-4, 6, 47. Defendants do not seriously claim otherwise, instead complaining that the initial PPP loan application was submitted before the SBA issued additional guidance in April 2020. *See* MTD at 20-21. But 13 C.F.R. § 120.110(i) was first adopted in 1996 and prohibited businesses like the Country Club from obtaining any SBA loans whatsoever. Indeed, Section 120.110 is titled "What businesses are ineligible for SBA business loans?" and notes that "[p]rivate clubs and businesses which limit the number of memberships for reasons other than capacity" "are ineligible." The SBA later made clear that this existing prohibition applied to PPP loans, but that later clarification does not change that the Country Club was already "ineligible" to receive any "SBA business loans." In any event, the prohibition was certainly clear when the Country Club Borrower sought and received forgiveness for the PPP loan in November 2020. Accordingly, whether the PPP Loan was prohibited when Defendants first sought it (it was) is largely irrelevant because the forgiveness certifications – including that the funds were used for authorized purposes – caused the United States to forgive the PPP Loan and suffer damages as a result.

**b) Economic Need**

The Complaint clearly alleges that the Country Club Borrower did not have an economic need for the PPP Loan; there is zero indication that the PPP Loan was "necessary to support the ongoing operations of the" Country Club Borrower, much less due to the "[c]urrent economic uncertainty." Compl. ¶¶ 48, 49. Indeed, on information and belief the Club's wealthy clientele[4]

---

[3] In any event, this is a red herring. As noted in the MTD, neither Sunshine nor Christy was served with this lawsuit. MTD at 8. But the Country Club Borrower had to have acted through its officers or agents, regardless of whether it was through Sunshine and Christy or other designated agents. *Accord Umansky*, 2025 WL 873015, at *2-3 (dismissing as to individual defendants but denying motion to dismiss as to the borrower business).

[4] *See* ECF No. 37, Ex. E at 5 (noting that membership at the Country Club cost over $100,000 for

continued to pay their member dues and the Country Club (as other similar country clubs) maintained profitability during the pandemic. *Id.* Accordingly, a lack of economic need is sufficiently alleged.

Defendants argue that the SBA's safe harbor provision for PPP loans under $2 million nullifies their false economic necessity certification. MTD at 22. This safe harbor was adopted in May 2020, a full month ***after*** Defendant made their false certification concerning their supposed economic need for the loan. In any event, even if this later issued safe harbor provision applied (it does not), Defendants were still ineligible to receive the PPP Loan due to the nature of their business, which was (since at least 1996) not eligible to receive any "SBA business loans" at all.

**c) Unauthorized Expenses**

Because Defendants were ineligible to receive the PPP Loan in the first place, the certification in the forgiveness application that the funds were used on eligible expenses was necessarily false as a matter of basic logic. To wit, the Country Club has not been eligible to receive any "SBA business loans" since at least 1996 (*i.e.*, before, during, and after the pandemic). SBA PPP loans were required to be used on "payroll costs and other permitted expenses" consistent with the Paycheck Protection Program. Compl. ¶¶ 39, 48. Because Defendants were not eligible to receive any funds from the PPP, they could not have used the funds consistent with the PPP. Accordingly, the Use of Proceeds Certification and Loan Forgiveness Certification were each false. *Id.*

**2. The Complaint Adequately Alleges Scienter**

Defendants claim that the Complaint does not allege that Defendants acted with scienter. Relators may allege knowledge generally, Fed. R. Civ. P. 9(b), and thus need only provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The FCA defines "knowingly" as meaning a person "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C.

---

initiation plus monthly fees).

§ 3729(b)(1)(A)(i)-(iii). This tracks the traditional common law requirements for fraud. *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749–50 (2023). A FCA complaint "therefore must set out sufficient factual matter from which a defendant's knowledge of a fraud might reasonably be inferred." *U.S. ex. rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 679-81 (9th Cir. 2018); *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 757 (2023) (under the FCA's broad scienter standard, the culpable state of mind includes being "aware of such a substantial and unjustifiable risk but submitted the claims anyway."). The requisite scienter is the presentation of what is known to be false, and "'known to be false' does not mean scientifically untrue; it means a lie." *U.S. ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th Cir. 1998).

Recently, a district court in this circuit found scienter sufficiently pled in a similar PPP loan FCA case where the complaint alleged the defendant made "certain 'certifications' that were incorporated in the [PPP] form itself," including certifications that all information provided was "true and accurate in all material respects." *U.S. ex rel. Craig v. Hawthorne Mach. Co.*, 2024 WL 4294878 (S.D. Cal. Sept. 25, 2024); *see also United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*, 2025 WL 939890, at *8-9 (5th Cir. Mar. 28, 2025).

Here, just as in *Hawthorn Machinery*, the Complaint clearly alleges that Defendants' "knowingly" presented false claims to the government through the SBA's PPP program and the "PPP form itself." *See* Compl. ¶¶ 6-9, 22, 45-51. Then, "in combination with additional facts," the Complaint "make[s] the existence of this knowledge cogent." *United States v. 1850 Bryant Land LLC*, 2023 WL 4297585, at *5 (N.D. Cal. Jun. 30, 2023). These additional facts include, the required certifications made that (1) Defendants knew and understood all requirements to receive a loan, (2) their certifications were accurate, (3) they were eligible for the loan, and (4) they knew inaccurate information would expose them to civil and criminal penalties. Compl. ¶¶ 45-51. As a matter of logic, Defendants (1) knew the rules and regulations when they certified and lied about their eligibility, (2) lied when they certified that they knew the rules, or (3) lied when they executed the Understanding Certification. *Cf. Umansky*, 2025 WL 873015, at *4 (holding that scienter was adequately alleged based on the "reasonable inference" drawn from the fact of certification); *Neil*, 2025 WL 1127842, at *3 (same where CEO was "privy to the details of

[borrower's] operations and responsible for its effective operation, and therefore knew that [borrower] was" ineligible, "yet intentionally misrepresented that fact on the PPP application").

Defendants argue that the Complaint fails to show a specific intent to defraud, but "no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b)(1)(B). Instead, the reasonable inference (not speculation) is that Defendants – sophisticated entities who are certainly aware of (or should have been aware of) basic facts such as the nature of their business and whether their business is eligible for "SBA business loans" – at least recklessly made certifications that were false. These are not mere "[i]nnocent mistakes" or "mere negligent misrepresentations. *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996). These are clear misrepresentations about plain and obvious facts. At a minimum, a reckless state of mind is sufficiently pled because Defendants signed the Understanding Certification. As CEO and CFO, respectively, Sunshine and Christy "had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to . . . disclos[e] such facts …." *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984).[5]

### B. The Public Disclosure Bar Does Not Apply Because the Allegations Are Not Substantially the Same as Any Prior Public Disclosure

Defendants argue that this action is barred by the public disclosure provision of the FCA, 31 U.S.C. § 3730(e)(4)(A). That assertion fails as a matter of law and fact. Contrary to Defendants' characterization, the information supporting Relator's claims was not publicly disclosed in any forum that satisfies the statute's definition of public disclosure, nor is this case "based upon" such disclosures.

#### 1. The Information Underlying the Complaint Was Not Publicly Disclosed in a Manner that Triggers the Bar

Under § 3730(e)(4)(A), the FCA bars a relator's action only if "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in a specified

[5] Although Defendants Sunshine and Christy were not served, the Country Club Borrower had to have acted through its officers and agents.

public forum—such as a federal hearing, audit, or the "news media"—and the relator is not the "original source." 31 U.S.C. § 3730(e)(4)(A). Put by the Ninth Circuit, the "public disclosure bar is triggered if three conditions are met: (1) ***the disclosure at issue occurred through one of the channels specified in the statute***; (2) the disclosure was public; and (3) the relator's action is substantially the same as the allegation or transaction publicly disclosed." *United States ex rel. Solis v. Millennium Pharmaceuticals, Inc.*, 885 F.3d 623, 626 (9th Cir. 2018) (cleaned up) (emphasis added).

Courts emphasize that the bar applies only when the elements of fraud—both the alleged wrongdoing and the defendant's identity—were publicly disclosed in a readily apparent way. Under § 3730(e)(4)(A) and Ninth Circuit precedent, a disclosure only triggers the bar if the relator's allegations are "substantially the same" as what was publicly disclosed through one of the enumerated sources. *U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 571 (9th Cir. 2016). Another formulation is the so-called *Springfield* test:

> [I]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed.

*U.S. ex rel. Found. Aiding The Elderly v. Horizon W.*, 265 F.3d 1011, 1015 (9th Cir. 2001) (quoting *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994)), *opinion amended on denial of reh'g sub nom. U.S. ex rel. Found. Aiding Elderly v. Horizon W., Inc.*, 275 F.3d 1189 (9th Cir. 2001).

That is not the case here. The actual public disclosures relied upon by Defendants—a mix of PPP loan disbursement databases and generalized descriptions of SBA eligibility rules—do not provide the requisite "X + Y = Z" formula from which the alleged fraud can be inferred. *See id.* (stating the fraud must be inferable from public information disclosing both a misrepresented state of facts and the truth). The publicly available PPP Loan information reflected that Lender Defendants each received (and were at least partially forgiven for) PPP loans, and a reader can

infer that in order to do so it must have made the requisite certifications. *See* ECF No. 37, Exs. A, C-E (PPP borrower search results). But that disclosure does not reveal the underlying fraud, including that the Lender Defendants were ineligible lenders.

The PandemicOversight.gov listing (and similar ProPublica database) is the only public material identified in Defendants' Motion. MTD at 9. Even so, that information does not reveal the fraud. Indeed, unlike in *Kootstra* (on which Defendants heavily rely), the PPP loan application here did not reveal the fact that the Country Club was patently ineligible for a loan. *See Kootstra*, 2024 WL 3666470, at *4 ("Not only does Relator allege, Defendants reported being a mortgage lender on the PPP application, but *that information is also reflected on PandemicOversight.gov*.") (emphasis added); *see also United States ex rel. Relator LLC v. Lim*, No. 3:22-cv-04715 AGT (N.D. Cal. Apr. 23, 2025), ECF No. 51 (concluding, similar to *Kellogg*, that public disclosure bar applied because mortgage lender's obtaining PPP loans and its ineligibility for PPP loans were publicly disclosed on PandemicOversight.Gov website).

Most of what is on the PPP application is bare facts about the nature of the loan that the government already approved. Defendants' claim that the government had all it needed to determine that fraud had occurred – that X + Y = Z – is belied by the fact that the government approved of the loan and forgiveness with that same information. In fact, the Eligibility Certification on the same form suggests that no fraud occurred.

Instead, Plaintiff pulled together information about the Country Club Borrower from a variety of sources. While it is true that the information was in a sense "public," not all information available, through some method or another, to the public constitutes a "public disclosure" under the FCA. "By its plain terms, the public disclosure bar applies to some methods of public disclosure ***and not to others***." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 414 (2011) (emphasis added). The information about the true nature of the Country Club's business and lack of necessity for the loan clearly did not come from the FCA's first two public sources related to government hearing and investigations. *See* 31 U.S.C. § 3730(e)(4)(A)(1)-(2). Accordingly, the only available "public source" for this information under the FCA is "news media," a term undefined in the statute. Defendants do not attempt to define "news media," nor

even grapple with whether the publicly available information (exclusive of the facts of the PPP Loan) falls within that meaning.

The plain and historical meaning of "news media" quite obviously cannot include "all online information," which is simply "a matter of common sense." *See United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*, 2019 WL 3282619, at *11 (C.D. Cal. July 16, 2019) ("*Integra I*"), *rev'd and remanded on other grounds sub nom. Integra Med Analytics LLC v. Providence Health & Servs.*, 854 F. App'x 840 (9th Cir. 2021). *Integra I* looked to cases from across the country attempting to define "news media," starting with the statutory text, and concluded that the term "news media" cannot include all information available to the public from any source. Indeed, such an interpretation would eviscerate Congress's carefully considered exceptions. For example, an expansive interpretation of "news media" would include all cases and hearings filed in any database (*e.g.*, PACER), not just those cases and hearing in which "the government or its agent is a party." 31 U.S.C. § 3730(e)(4)(A)(i). This shows that Congress intended to include only those sources the government is likely to be aware of, not situations where the government is "less likely to learn about events that transpire in cases it is not involved with." *Integra I*, 2019 WL 3282619, at *12.[6]

Here, as there has been no showing how or why the government would have been aware of the information that Plaintiff compiled from other sources. The PPP loan documents could not and did not provide: (1) information about the nature of the Country Club Borrower and the Country Club; (2) whether they qualified for an SBA PPP loan under an exception to the prohibition on private clubs receiving any "SBA business loans"; and (3) information about whether Defendants required the PPP Loan. Relator conducted an extensive investigation to piece together this information, relying on far more than the PandemicOversight.gov website discrete

---

[6] Although some district courts have adopted an expansive interpretation of "news media," as the *Integra I* court explained those courts did so without analysis of the statutory text, often simply parroting a prior case that also failed to conduct the required textual analysis. *See Integra I*, 2019 WL 3282619, at *10-12 (explaining that "none" of those courts "attempted to analyze whether the online sources at issue fell within the ordinary meaning of the term 'news media'"); *cf. Schindler*, 563 U.S. at 408 (starting analysis of the public disclosure bar with the statutory text).

information. Accordingly, the information the FCA claim is "based on" is not simply the PPP loan documents but rather a variety of other sources that do not implicate the public disclosure bar.

Here, Relator had to obtain information about the true nature of the Country Club from non-public sources. Defendants contend that a single website article constitutes a "news media" report that provides information about the Country Club. *See* ECF No. 37, Ex. E. But this "article" appears to be a paid promotion (*i.e.*, an advertisement) by the Country Club rather than the sort of "news media" that the FCA looks to. For example, the article is titled "Shady Canyon: One of OC's Most Prestigious Communities: Celebrating 20 years, the collection of estate homes offers value for all of Irvine." *Id.* There appears to be no author that wanted to put their name on this advertisement. The supposed article reads like an advertisement, continuously promoting the benefits of purchasing a home in "Irvine's most exclusive, secluded, and prestigious neighborhood." *Id.* The subheadings are "A special place," "Resort-style, rustic living," and "Take a look around." *Id.* This is not the type of "news media" that could plausibly alert the federal government about the fraudulent nature of the Country Club Borrower's PPP Loan application and forgiveness, and it is telling that this is the only purposed "news media" that Defendants could find to support their defense. *See, e.g., Neil*, 2025 WL 1127842, at *3 ("While all these sources may be publicly available, only the Pandemic Oversight Website qualifies as a 'public disclosure' under § 3730(e)(4) as a federal report. And the Website does not disclose the allegations or transactions of Relator's FCA claim."); *Umansky*, 2025 WL 873015, at *3 ("Defendants have not presented evidence that all of the relevant allegations were publicly disclosed."); *Riviera*, 2025 WL 1421265, at *6 (holding that the public disclosure bar could not apply because the alleged public sources did not address all of the bases by which the borrower was alleged to be ineligible).

In any event, the advertisement is dated November 2, 2021, which is a full year ***after*** the Country Club Borrower obtained loan forgiveness and completed the fraud. Accordingly, it could not have possibly alerted the government about the nature of the Country Club's business or its ineligibility for any "SBA business loans" at all prior to the completion of the fraud.

The Complaint in this case assembles information from multiple non-obvious sources: a federal loan database; research about the nature of Defendants' business from various sources; and Defendants' own representations in connection with the PPP application and loan forgiveness process. This aggregation, which is not available in a single publicly accessible source, involved considerable investigative effort and insight. Courts routinely decline to apply the bar where the relator's claim relies on investigative synthesis rather than mere repackaging of readily available information. *See United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 329 (5th Cir. 2011) (explaining that the bar does not apply merely because some of the underlying facts were allegedly publicly available).[7]

While Defendants highlight the PandemicOversight.gov database, that site provides only basic PPP loan details—amount, recipient, lender, general industry type, and approval date. It does not reveal the true nature of Defendants' business, their ineligible status under the SBA rules, or the falsity of the underlying certifications. Nor does it disclose the basis upon which forgiveness was obtained. That was the product of investigative research. Those types of information are not public disclosures under the FCA because the sources do not fit into the statute's "plain terms," through which "the public disclosure bar applies to some methods of public disclosure and not to others." *Schindler*, 563 U.S. 414. Thus, Relator's claims cannot be said to be "based upon" these limited, fragmented disclosures.[8]

To the extent that Defendants may argue that the name of the applying business could have provided information about the true nature of the business, the PPP loan application also contained the Eligibility Certification stating that "[t]he Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted." Compl. ¶ 32. Accordingly, a reader of that PPP loan application would not be able to determine that fraud had occurred,

---

[7] This appears to be in accord with the Ninth Circuit. *See, e.g., U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 579 (9th Cir. 2016) (declining to adopt a "partly based on" concept for the public disclosure bar).

[8] Because the public disclosure bar does not apply, there is no need to determine whether Plaintiff was an "original source" under the FCA and interpreting case law.

particularly where, as here, lenders were entitled to rely on the accuracy of the representations provided by the applicant.

## V. CONCLUSION

For the above reasons, Defendants' motion to dismiss should be denied. In the alternative, the Court should dismiss with leave to amend.

Respectfully submitted,

*/s/ Kristen L. Nelson*
Kristen Leigh Nelson
**HECHT PARTNERS, LLP**
2121 Avenue of the Stars Suite 800
Century City, CA 90067
Tel. 646-490-2408
Email: knelson@hechtpartners.com

*Attorneys for Relator LLC*

**CERTIFICATE OF SERVICE**

I, Kristen L. Nelson, hereby certify that on June 9, 2025, I caused a true and correct copy of the foregoing document to be served to all counsel of record via CM/ECF.

Dated: June 9, 2025

HECHT PARTNERS LLP

By: *\/s/ Kristen L. Nelson*

Kristen L. Nelson