Charles F. Dender (admitted *pro hac vice*)
Madeline Harding (*pro hac vice* forthcoming)
Mollie Weiss (*pro hac vice* forthcoming)
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
cdender@dicellolevitt.com
mharding@dicellolevitt.com
mweiss@dicellolevitt.com

Kristen L. Nelson (SBN 269318)
**HECHT PARTNERS LLP**
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Tel.: (646) 502-9515
knelson@hechtpartners.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, *ex rel*. RELATOR LLC

Plaintiffs,

v.

STEVEN SUNSHINE, an individual, JON CHRISTY, an individual, THE SHADY CANYON GOLF CLUB, INC., a California nonprofit corporation, and DOES 1-10,

Defendants.

Case No. 8:23-cv-00134-JVS-ADS

Relator LLC's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint

Date: October 27, 2025
Time: 1:30 p.m.
Place: Ronald Reagan Federal Building and U.S. Courthouse
411 West Fourth Street
Courtroom 10C
Santa Ana, CA 92701

Judge: Hon. James V. Selna

Action Filed: January 23, 2023
Trial Date: Not Set.

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........ 1
II. STATEMENT OF FACTS ........ 4
III. LEGAL STANDARD ........ 4
IV. ARGUMENT ........ 5
A. The Paycheck Protection Program ........ 5
B. The False Claims Act ........ 6
C. The Public Disclosure Bar Does Not Apply ........ 7
1. There was no Public Disclosure of "Substantially the Same" Allegations or Transactions Alleged in the FAC ........ 8
2. Plaintiff is an Original Source ........ 10
D. The FAC Satisfies Rule 9(b) ........ 12
1. The FAC Alleges that Shady Canyon's Eligibility Certification was False ........ 14
2. The FAC Alleges that Shady Canyon's Economic Uncertainty Certification was False ........ 14
3. The FAC Alleges that Shady Canyon's Use of Proceeds Certification was False ........ 14
E. The FAC Adequately Alleges Scienter ........ 15
F. The FAC States a Claim Against Both Sunshine and Christy ........ 17
G. The Two New Causes of Action in the FAC are Properly Pled ........ 17
H. Any Dismissal Should be with Leave to Amend ........ 18
V. CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*U.S. ex rel. 3729, LLC v. Evernorth Health, Inc. et al.*, No. 23-5564, 2025 WL 383801 (9th Cir. Feb. 4, 2025) ........ 8

*A1 Procurement, LLC v. Thermcor, Inc.*, No. 2:15-cv-00015, 2017 WL 9478501 (E.D. Va. Apr. 4, 2017) ........ 8

*U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 933 F. Supp. 2d 825 (E.D. Va. 2013) ........ 11

*U.S. ex rel. Booker v. Pfizer, Inc.*, No. 10-cv-11166-DPW, 2014 WL 1271766 (D. Mass. Mar. 26, 2014) ........ 11

*Burgess v. Premier Corp.*, 727 F.2d 826 (9th Cir. 1984) ........ 16

*United States ex rel. Calva v. Impac Secured Assets Corp.*, No. 16-cv-1983-JVS, 2018 WL 6016152 (S.D. Cal. June 12, 2018) ........ 11

*E&E Co., Ltd. v. Kam Hing Ent., Inc.*, 429 F. App'x 632 (9th Cir. 2011) ........ 12, 17

*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ........ 18

*U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166 (9th Cir. 2006) ........ 12

*U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261 (9th Cir. 1996) ........ 12

*U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565 (9th Cir. 2016) ........ 2, 8, 9, 10

*U.S. ex rel. Miller, et al. v. Manpow LLC*, No. 2:21-cv-5418-VAP, 2022 WL 18397530 (C.D. Cal. Sept. 14, 2022) ........ 3, 17

*Prather v. AT&T, Inc.*,
847 F.3d 1097 (9th Cir. 2017) (recognizing that after 2010 amendments to the FCA, the "public disclosure bar" is an affirmative defense) .......... 7

*United States ex rel. Relator LLC v. Tennyson*,
2:23-cv-05887-SRM-SSC, Dkt. No. 75 (C.D. Cal. Sep. 29, 2025) .......... 2, 10

*U.S. ex rel. Silbersher v. Allergan, Inc.*,
506 F. Supp. 3d 772 (N.D. Cal. 2020) .......... 8

*Silbersher v. Valeant Pharm. Int'l, Inc.*,
89 F.4th 1154 (9th Cir. 2024) .......... 1, 2, 3, 10

*U.S. v. 1850 Bryant Land LLC*,
No. 21-cv-5742-RS, 2023 WL 4297585 (N.D. Cal. Jun. 30, 2023) .......... 16

*U.S. v. Hawthorne Mach. Co.*,
No. 20-cv-1625-WQH, 2024 WL 4294878 (S.D. Cal. 2024) .......... 13, 15

*U.S. v. Kiewit Pacific Co.*,
41 F. Supp. 3d 796 (N.D. Cal. 2014) .......... 11

*Ebeid ex rel. U.S. v. Lungwitz*,
616 F.3d 993 (9th Cir. 2010) .......... 12

*United States v. Allergan, Inc.*,
46 F.4th 991 (9th Cir. 2022) .......... 7

*United States v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011) .......... 4, 5

**Statutes**

15 U.S.C. § 645 .......... 6

18 U.S.C. § 1001 .......... 6

18 U.S.C. § 1004 .......... 6

18 U.S.C. § 3571 .......... 6

31 U.S.C. § 3729 *et seq.* .......... *passim*

31 U.S.C. §3730(e)(4) .......... 7

31 U.S.C. § 3730(e)(4)(B)(2) .......... 11

False Claims Act .......... *passim*

134 Stat. .......... 5

**Other Authorities**

(“CARES”) Act., Pub. L. No. 116-136 .......... 5

Fed. R. Civ. P. 12(b)(6) .......... 1

Fed. R. Civ. P. 9(b) .......... 1, 3, 12, 15

Fed. R. Civ. P. 15 .......... 18

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Plaintiff-Relator, Relator LLC ("Plaintiff"), respectfully submits this Memorandum of Points and Authorities in opposition to The Shady Canyon Golf Club ("Shady Canyon"), Shady Canyon's chief executive officer, Steven Sunshine ("Shady Canyon's CEO"), and Shady Canyon's chief financial officer, Jon Christy's ("Shady Canyon's CFO") (together, the "Defendants") motion to dismiss Plaintiff's First Amended Complaint (the "FAC") under Federal Rule of Civil Procedure 12(b)(6). Defendants' Motion must be denied because there has been no public disclosure regarding the specific allegations (the fraudulent nature of the disclosed transaction) made in the FAC, the FAC satisfies the requirements of Federal Rule 9(b), the FAC adequately alleges that Defendants acted with scienter in applying for and receiving a $1,689,200.00 Government grant.

*First*, the public disclosure bar does not apply to this case because Defendants fail to point to either a single source or a related set of sources that disclose Plaintiff's allegations or the fraudulent nature of the transaction at issue in this case. *Silbersher v. Valeant Pharm. Int'l, Inc.*, 89 F.4th 1154, 1167 (9th Cir. 2024) (Defendants must show that "X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. To disclose [a] fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed"). Using the Ninth Circuit's public disclosure test of X + Y = Z, Defendants boisterously try and convince this Court that X alone equals Z. Of course, X alone does not equal Z. What Defendants do not point to—because they cannot point to it—is the presence of any qualified, single public disclosure of the entire fraudulent transaction: that 1) Shady Canyon was a private golf club that restricts its membership for reasons other than capacity and did not face economic uncertainty during the COVID-19 pandemic, and 2) Shady

Canyon applied for and received both the PPP First Draw Loan and, subsequently, forgiveness on that PPP First Draw Loan (the fraudulent nature of the transaction). That is, Defendants do not—because they cannot—demonstrate that the Y component of the Ninth Circuit's equation test exists in any of the sources they have identified: that is, that there is any single public disclosure that this transaction may have been fraudulent. Put differently, Defendants cannot point to anything that would have put the Government on notice that this transaction may have been fraudulent. *See United States ex rel. Relator LLC v. Tennyson*, 2:23-cv-05887-SRM-SSC, Dkt. No. 75 at 12 (C.D. Cal. Sep. 29, 2025) ("[T]he loan information on PandemicOversight.gov alone simply does not disclose any . . . transaction of fraud.") (citations omitted).

Defendants attempt to convince this Court that a tapestry of completely unrelated facts about the underlying transaction is enough to allow them to escape liability for their fraud. It does not. *Silbersher*, 89 F.4th at 1167. In the absence of a "prior direct claim of fraud" which even Defendants do not claim occurred here, Defendants are required to point this Court to the prior disclosure of "facts from which fraud can be inferred." *Id*. ("We have recognized a distinction between an 'allegation' and a 'transaction' for purposes of the public disclosure bar. An allegation refers to a prior 'direct claim of fraud,' while a 'transaction' refers to the disclosure of 'facts from which fraud can be inferred.'") *Id*. According to Defendants, the public disclosure bar prevents a private relator from pursuing otherwise valid litigation where there exists on the internet entirely unrelated information on entirely unrelated websites that, with the benefit of post-lawsuit hindsight, allows a Defendant the protections of the public disclosure defense. This Court should reject that sweeping argument. *Id*. ("Placing Silbersher's allegations into the *Mateski* formula, the misrepresented facts would be Valeant's claim that it was *not obvious* that Apriso would be effective without food, and that the Otterbeck

Patents for Apriso's delayed-release formula were original discoveries. And the alleged truth would be that it *was* obvious that Apriso can be effectively administered without food and that the Otterbeck patents were invalidly obtained. The scattered disclosures when viewed together possibly reveal some of these true and misrepresented facts, but nothing in combination from which fraud can reasonably be inferred.") *Id*. at 1168.

*Silbersher* is nearly on all fours with this Case. Defendants here point to information scattered across the internet that, even if they did reveal both X and Y, never appeared in a single disclosure, *i.e.*, "nothing in combination from which fraud can reasonably be inferred." *Id*.

*Second*, Plaintiff's allegations in the FAC (i) that Shady Canyon's CEO and CFO knowingly and willfully submitted—or knowingly and willfully caused to be submitted—Shady Canyon's fraudulent application for the PPP First Draw Loan, and (ii) that Shady Canyon's CEO and CFO knowingly and willfully submitted—or knowingly and willfully caused to be submitted—Shady Canyon's subsequent application for forgiveness on that PPP First Draw Loan more than satisfy both Federal Rule 9(b) and the scienter requirements for both Shady Canyon and the Individual Defendants. Simply stated, the CEO and CFO of a private golf club that restricts its membership for reasons other than capacity (the who) knew or should have known that they ran a private golf club that restricts its membership for reasons other than capacity (knowledge), and knew or should have known that private clubs that restrict membership for reasons other than capacity were generally excluded from participating in the PPP, and yet submitted the application (the what and the when), received the money Shady Canyon was not entitled to and did not need, and subsequently applied for forgiveness on that improperly taken loan, converting the loan into a Government grant (the why). *See U.S. ex rel. Miller, et al. v. Manpow LLC*, No. 2:21-cv-5418-VAP, 2022 WL 18397530, at *7 (C.D. Cal. Sept. 14, 2022).

*Finally*, the two new causes of action in the FAC that were not in Plaintiff's original Complaint are properly pled and should not be dismissed.

## II. STATEMENT OF FACTS

This is an FCA action to recover treble damages and civil penalties against Defendants, who defrauded the Small Business Administration ("SBA") in connection with Shady Canyon's application for and receipt of $1,689,200 in COVID-19 pandemic-related Paycheck Protection Program ("PPP") funding (the "First Draw Loan") in 2020 and the subsequent forgiveness—in its entirety—of that First Draw Loan on November 3, 2020.

Shady Canyon applied for a PPP First Draw Loan in round 1 of the PPP, in April 2020. Dkt. 46, ¶ 19. Shady Canyon's CEO and CFO submitted the First Draw Loan application, or caused that application to be submitted, despite knowing that Shady Canyon was ineligible to participate in the PPP because Shady Canyon was, and is, a private club that limits the number of its memberships for reasons other than capacity. Dkt. 46, ¶¶ 6–7; 55, 67. Defendants also knew that Shady Canyon did not meet the economic-necessity standard for obtaining the PPP First Draw loan. Dkt. 46, ¶¶ 4; 41; 59; 69–70.

Shady Canyon's PPP First Draw Loan was approved by the Small Business Administration on April 3, 2020, and Shady Canyon received the funding shortly thereafter. Dkt. 46, ¶ 19. Later, Shady Canyon's CEO and CFO knowingly submitted—or caused to be submitted—the PPP First Draw Loan forgiveness application. That application was fraudulent because Shady Canyon was never eligible to receive the PPP First Draw Loan in the first place. Dkt. 46, ¶¶ 45–49.

## III. LEGAL STANDARD

In considering a motion to dismiss, a court must accept as true all well-pleaded allegations of fact in the complaint and construe them in the light most favorable to the plaintiff. *United States v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011).

A court must determine whether the complaint contains "sufficient factual matter that taken as true, state[s] a claim for relief [that] is plausible on its face." *Id*. (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## IV. ARGUMENT

### A. The Paycheck Protection Program

On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act.[1] The CARES Act was the Government's initial economic response to the COVID-19 pandemic, and it included the PPP,[2] which authorized up to $349 billion in forgivable loans (known as PPP First Draw Loans) to qualifying small businesses to facilitate job retention and certain other permitted business expenses.[3] These loans were to be underwritten by private banks but were funded and guaranteed by the SBA, which would then forgive (pay off) the loan balances if certain criteria were met. In April 2020, Congress authorized over $300 billion in additional PPP funding.[4] The CARES Act funding for the PPP ended on August 8, 2020. By that time, there were roughly $525 billion in PPP loans made to approximately 5.2 million businesses.

To obtain a PPP First Draw Loan, a qualifying business had to submit a loan application signed by an authorized representative, typically to a private bank which would issue the loan with minimal underwriting, subject to an SBA guarantee, and ultimately funded by the SBA. To qualify for a PPP First Draw Loan, a business had to certify on its application, among other things, that it (i) was "eligible to receive a

---

[1] Pub. L. No. 116-136, 134 Stat.

[2] Regulations.gov.

[3] SBA Paycheck Protection Program ("PPP") Loan Forgiveness: In Brief, *available at*, R46397.pdf.

[4] *Id.*

loan under the rules in effect at the time this application [was] submitted . . ." (ii) faced economic uncertainty due to the COVID-19 pandemic; (iii) would use the PPP First Draw Loan funds to maintain its existing payroll and to cover certain qualified expenses; and (iv) would not seek forgiveness of more than 25% of the loan for non-payroll costs. PPP applicants also acknowledged that false certifications on their applications would violate federal law and be punishable by imprisonment and civil fines, including violations of: (i) 18 U.S.C. §§ 1001, 1004, 3571; (ii) 15 U.S.C. § 645; and (iii) the FCA, 31 U.S.C. §§ 3729 *et seq*.

### B. The False Claims Act

The False Claims Act ("FCA") has been the Government's primary fraud fighting tool since the Civil War era and provides the Government with its main means of recovery for frauds against the public fisc. *Qui tam* provisions encourage private citizens with information about fraud (known as "relators") to sue on the Government's behalf. The FCA is intended to reach all types of fraud, without qualification, that might result in financial loss to the Government. The Government has used the FCA to combat fraud in connection with PPP loans.[5]

The FCA provides that any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," 31 U.S.C. § 3729(a)(1)(B), is liable to the United States for civil penalties "plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1).

---

[5] The first FCA settlement involving PPP loans was announced on September 13, 2022. The Government press release is available here: Southern District of Texas | First-ever False Claims Act settlement received from Paycheck Protection Program lender | United States Department of Justice.

- "Knowingly" is defined to mean "that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1). No proof of specific intent to defraud is required. *Id*.
- "Claim" is defined in the statute to mean "any request or demand, whether under a contract or otherwise, for money or property" which is "presented to an officer, employee, or agent of the United States." 31 U.S.C. § 3729(b)(2)(A). Alternatively, it is "any request or demand, whether under a contract or otherwise, for money or property" which is "made to a contractor, grantee, or other recipient" of federal funds, if the money is spent on behalf of the Government or to advance a Government program or interest, and if the Government "provides or has provided any portion of the money or property requested or demanded," or "will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." *Id*.
- "Material" means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. §3729(b)(4).

There is no requirement in the FCA that a relator be an insider. The only requirement is that the relator bring forward "genuinely valuable information." *See United States v. Allergan, Inc.*, 46 F.4th 991, 994 (9th Cir. 2022).

**C. The Public Disclosure Bar Does Not Apply**

Defendants invoke the FCA's "public disclosure" provision, 31 U.S.C. §3730(e)(4). Defendants' Motion to Dismiss, pgs. 18–25. However, Defendants fail to carry their burden to show this affirmative defense applies here. *See Prather v. AT&T, Inc.*, 847 F.3d 1097, 1102 (9th Cir. 2017) (recognizing that after 2010

amendments to the FCA, the "public disclosure bar" is an affirmative defense).

The Ninth Circuit has recently reiterated that the public disclosure bar is only triggered if three things are true: (1) "the disclosure at issue occurred through one of the channels specified" in the FCA; (2) "the disclosure was public"; and (3) "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed." *See U.S. ex rel. 3729, LLC v. Evernorth Health, Inc. et al.*, No. 23-5564, 2025 WL 383801, at * 2 (9th Cir. Feb. 4, 2025) (holding that the public disclosure bar does not apply where sources do not provide sufficient evidence to infer that the defendant was engaged in a fraudulent scheme similar to the relator's claims). There "must be a disclosure of fraudulent 'allegations or transactions' and not merely a disclosure of information" from one of the three specified channels. *A1 Procurement, LLC v. Thermcor, Inc.*, No. 2:15-cv-00015, 2017 WL 9478501, at *8 (E.D. Va. Apr. 4, 2017). An "allegation" is a "direct claim of fraud," while a "transaction" refers to "facts from which fraud can be inferred." *U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 571 (9th Cir. 2016). Ninth Circuit precedent has consistently construed the third element to require (1) that the previously disclosed information contain either a "direct claim of fraud" or "facts from which fraud can be inferred"; and (2) that the "fraud thus disclosed be 'substantially similar to' the fraud alleged in the *qui tam* action." *See Evernorth Health*, 2025 WL 383801, at *3. It is well-established that general internet information is not necessarily a disqualifying "public disclosure." *See U.S. ex rel. Silbersher v. Allergan, Inc.*, 506 F. Supp. 3d 772, 807 (N.D. Cal. 2020).

1. <u>There was no Public Disclosure of "Substantially the Same" Allegations or Transactions Alleged in the FAC</u>

Plaintiff recognizes that the Court previously found that there had been a public disclosure that "Shady Canyon received PPP loans despite being ineligible as a private club that restricts members based on factors other than capacity." Dkt. 43,

pg. 9. Nevertheless, Plaintiff maintains that there was no public disclosure of "substantially the same" fraudulent transactions that are alleged in the FAC.

*First*, there was no single public disclosure of the fact that Shady Canyon ***was ineligible to receive a PPP loan because it was a private club*** that restricts its membership for reasons other than capacity yet certified that it was eligible on its PPP loan application. Defendants argue that the following facts have been publicly disclosed in the news media about Shady Canyon: 1) Shady Cnayon is a private, exclusive, members-only club, 2) "Shady Canyon's 300-acre golf course is the centerpiece of an expensive gated community," and 3) Shady Canyon's members are "wealthy or affluent." Defendants' Motion to Dismiss, pg. 20. But even if the sources of these facts do fall within the scope of §§ 3730(e)(4)(A)(i)–(iii), they still would not be "public disclosures" for purposes of the FCA because no one source discloses "substantially the same allegations or transactions" as alleged in the FAC.

The Ninth Circuit has held that there is no public "allegation of fraud [where] the publicly disclosed information does not contain an explicit accusation of wrongdoing." *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 571 (9th Cir. 2016) (internal quotation marks omitted). And to decide if "substantially the same . . . transactions" have been alleged, the Ninth Circuit has said "[i]f X + Y = Z . . . the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed." *Id.*

Defendants do not satisfy this inquiry. Indeed, neither PandemicOversight.gov, nor the Pro Publica article, nor the Irvine Standard article, nor any of the additional sources that Defendants have attached as exhibits to their Motion disclose a substantially similar allegation or transaction because ***none contain an allegation of fraud or wrongdoing***. With respect to a "transaction," no single identified source has ***both*** the "X" ***and*** the "Y" information necessary to infer that Defendants committed fraud without additional information from other sources.

*See Tennyson*, 2:23-cv-05887-SRM-SSC, Dkt. No. 75 at 12 ("[T]he loan information on PandemicOversight.gov alone simply does not disclose any . . . transaction of fraud.") (citations omitted).

Facing very similar facts, the Ninth Circuit recently reversed a dismissal based on the public disclosure bar. In *Silbersher*, the Ninth Circuit found that a handful of sources referenced by that relator were potentially public and within one of the three statutory channels. 89 F.4th 1154, 1166 (9th Cir. 2024). Nonetheless, applying the *Mateski* "X + Y = Z" formula, the *Silbersher* court concluded that none of these revealed the "combination" of allegations necessary for an inference of an FCA violation. *Id.* at 1167–68. Specifically, the court explained "the scattered qualifying public disclosures may each contain a piece of the puzzle, but when pieced together, they fail to present the full picture of fraud. In his *qui tam* action, Silbersher filled the gaps by stitching together the material elements of the allegedly fraudulent scheme." *Id.* Plaintiff has done the same as the *Silbersher* relator.

*Second*, there were no public disclosures of the following transactions: 1) that Shady Canyon did not face economic uncertainty during the COVID-19 pandemic yet certified on its PPP loan application that it faced economic uncertainty, and 2) that Shady Canyon never intended to use its PPP loan proceeds to retain workers or maintain payroll yet certified that it would do so on its PPP loan application. Indeed, Defendants do not even ***attempt*** to argue there was a public disclosure of these fraudulent transactions, and none of the numerous sources they have attached to their Motion reveal these facts. Therefore, regardless of whether the Court finds there was a public disclosure of the fact that Shady Canyon was ineligible to receive a PPP loan as a private club, the Court should decline to dismiss this action based on the public disclosure bar.

2. <u>Plaintiff is an Original Source</u>

But even if the Court disagrees with Plaintiff and finds that these sources are

covered public disclosures, that would still not warrant dismissal because Plaintiff is an original source within the meaning of the FCA.[6] Among other things, the FCA defines an original source as one "who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B)(2).

Despite Defendants' insinuations to the contrary, a relator does not need to have been directly involved in the PPP loan application, or to have directly accessed other evidence, to qualify as an original source. This is because the FCA was amended to remove the word "direct" from the original source definition. *See, e.g.*, *U.S. v. Kiewit Pacific Co.*, 41 F. Supp. 3d 796, 807 (N.D. Cal. 2014) ("[T]he removal of the word 'direct' appears to broaden the exception and permit a relator to qualify as an 'original source' of information even if that information was obtained indirectly."); *U.S. ex rel. Booker v. Pfizer, Inc.*, No. 10-cv-11166-DPW, 2014 WL 1271766, at *8 (D. Mass. Mar. 26, 2014) (same); *U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 933 F. Supp. 2d 825, 842 (E.D. Va. 2013) (same).

Moreover, this information, although available online, was found during the discovery process conducted by Plaintiff. This is Plaintiff's role as a relator: to investigate and uncover information that a lay person may overlook. Although anyone can hypothetically find this information online, one still needs to know what to look for and where to look for it. Information is not easily accessible without the time and skill to find it. Without those two things, the possibility of discovering such information decreases tremendously. The information Plaintiff provided in the FAC regarding Shady Canyon's status as a private club and the fact that Shady Canyon

[6] The Court should only determine "whether the relator is an 'original source' within the meaning of the statute" if the Court finds there was a public disclosure with all three components, *United States ex rel. Calva v. Impac Secured Assets Corp.*, No. 16-cv-1983-JVS, 2018 WL 6016152, at *3 (S.D. Cal. June 12, 2018).

did not face economic uncertainty during the COVID-19 pandemic came from a lengthy discovery investigation that Plaintiff conducted. Therefore, the issue of whether the public disclosure bar applies to this action should at the very least be left to a motion for summary judgment after the parties engage in discovery.

In sum, Defendants' attempt to invoke the public disclosure bar fails at every turn, and the Court should reject it.

**D. The FAC Satisfies Rule 9(b)**

The FCA imposes liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States. 31 U.S.C. § 3729(a)(1)(A); *see also U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996) ("What constitutes the FCA offense is the knowing presentation of a claim that is either fraudulent or simply false."). While fraud must be alleged with particularity, in the case of corporate defendants, "the rule may be relaxed as to matters within the opposing party's knowledge." *E&E Co., Ltd. v. Kam Hing Ent., Inc.*, 429 F. App'x 632, 633 (9th Cir. 2011). The FAC adequately states an FCA claim as to all Defendants.

The elements of an FCA claim are: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). To allege an FCA claim, "it is sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998–99 (9th Cir. 2010) (internal quotations and citation omitted). Defendants only address the first two elements in their Motion.

To survive a challenge under Federal Rule 9(b), a party must plead "allegations of fraud . . . specific enough to give [D]efendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend

against the charge and not just deny that they have done anything wrong." *U.S. v. Hawthorne Mach. Co.*, No. 20-cv-1625-WQH, 2024 WL 4294878, at * 3 (S.D. Cal. 2024) (citation omitted). "This means the plaintiff must allege 'the who, what, when, where, and how of the misconduct charged.'" *Id.* Here, Plaintiff has alleged "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Id*. Plaintiff has exceeded these pleading requirements in the FAC and as such, Defendants' motion should be denied.

***The Who***. Plaintiff alleges in its FAC that Defendants (specifically Shady Canyon's CEO and CFO) knowingly submitted—or knowingly caused to be submitted—a false and fraudulent application to the SBA for a First Draw PPP loan. Dkt. 46, ¶¶ 40–44; 54–64; 67–72. As is detailed in the FAC, Shady Canyon's CEO and CFO submitted that application during the start of the COVID-19 pandemic and after PPP was passed by the Congress and signed by the President and the rules for obtaining a PPP loan were published. Dkt. 46, ¶¶ 8; 19; 26–32. Moreover, Shady Canyon's CEO and CFO knowingly submitted—or knowingly caused to be submitted—a false and fraudulent application for forgiveness on that PPP First Draw Loan, which effectively converted the PPP First Draw Loan into a Government grant to Shady Canyon. Dkt. 46, ¶¶ 45–49; 72.

***The What, When, Where, and How***. Plaintiff's claims are based on several false certifications from Defendants' PPP loan and loan forgiveness applications. The FAC alleges that the PPP loan application certifications included mandatory certifications by borrowers, *inter alia*, that (1) they were eligible for the loan amount; (2) the economic uncertainty made the loan necessary to support ongoing operations of the business; and (3) the loan proceeds were used for eligible expenses. Dkt. 46, ¶ 29. Borrowers also were warned as to the possibility of both civil and criminal charges for false certifications. Dkt. 46, ¶¶ 32; 37; 42; 49.

Moreover, Shady Canyon knew it was not facing any "economic uncertainty [that] made the loan necessary to support ongoing operations of the business." Dkt. 46 ¶¶ 4–5; 41; 59; 68–70.

1. The FAC Alleges that Shady Canyon's Eligibility Certification was False

The FAC alleges that on its loan application, Shady Canyon certified that it was eligible to receive a PPP loan. Dkt. 46, ¶¶ 29–30; 40; 55. The FAC also alleges that Shady Canyon is a private club that restricts membership for reasons other than capacity. Dkt. 46 ¶¶ 3; 6–7; 40; 55–57. Finally, the FAC alleges that private clubs that restrict membership for reasons other than capacity were not eligible to receive PPP loans. Dkt. 46 ¶¶ 3; 6–7; 55–57.

2. The FAC Alleges that Shady Canyon's Economic Uncertainty Certification was False

The FAC alleges that Shady Canyon certified on its loan application that "current economic uncertainty makes this loan necessary to support the ongoing operations" of Shady Canyon. Dkt. 46, ¶¶ 41; 55; 59–60. However, Shady Canyon in fact "was faced with no economic uncertainty at all due to the pandemic and needed no assistance to maintain its payroll," and that Shady Canyon faced no liquidity crunch during the pandemic because its members were all legally required to continue paying their membership dues. Dkt. 46 ¶¶ 4; 41; 59; 68–70.

3. The FAC Alleges that Shady Canyon's Use of Proceeds Certification was False

Finally, the FAC alleges that on its loan application, Shady Canyon certified the loan proceeds would be used for "to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments." Dkt. 46, ¶¶ 42; 60. However, as a private club, Shady Canyon was prohibited from obtaining any PPP loans. Therefore, any expenditures using PPP

loan money were not eligible expenses. Additionally, the FAC alleges that this certification was false at the time it was made because Shady Canyon did not need Government support to retain workers, maintain payroll, or pay for other qualified expenses. Dkt. 46, ¶ 61. For example, the FAC alleges that Shady Canyon's grounds crew "were all deemed essential employees in California during the COVID-19 pandemic," and that outdoor activities were encouraged during the pandemic, and many of Shady Canyon's employees were engaged in outdoor activities. Dkt. 46, ¶¶ 62–64. The FAC also alleges that when seeking forgiveness of the PPP loan, Defendants falsely reported that they spent the loan proceeds on eligible expenses, making Shady Canyon's loan forgiveness application and certifications false. Dkt. 46, ¶¶ 46–48.

### E. The FAC Adequately Alleges Scienter

Rule 9(b) states that Defendants' state of mind may be pled generally, without specificity. Scienter under the FCA includes three states of mind, any of which is sufficient to find liability for "knowing" acts, including: (1) actual knowledge, (2) deliberate ignorance; or (3) reckless disregard. 31 U.S.C. § 3729(b)(1)(A). In other words, "the FCA requires no proof of specific intent to defraud. The Court of Appeals for the Ninth Circuit has further explained that the requisite *scienter* is the knowing presentation of what is known to be false, and that known to be false does not mean scientifically untrue; **it means a lie**." *Hawthorne*, 2024 WL 4294878, at *8 (*quoting U.S. ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th Cir. 1998) (cleaned up) (emphasis added)). Therefore, "[a]lthough the circumstances of a fraud must be pleaded with particularity, knowledge may be pleaded generally. An FCA complaint therefore must set out sufficient factual matter from which a defendant's knowledge of a fraud might reasonably be inferred." *Hawthorne*, 2024 WL 4294878 at *8 (cleaned up).

The FAC first alleges that Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment to the Government. Dkt. 46, ¶¶ 39–64. Then, "in combination with additional facts," the FAC "make[s] the existence of this knowledge cogent." *U.S. v. 1850 Bryant Land LLC*, No. 21-cv-5742-RS, 2023 WL 4297585, *5 (N.D. Cal. Jun. 30, 2023). These facts include, for example, (1) that Defendants knew and understood applicable requirements to receive PPP loans, (2) Defendants falsely represented that their certifications were accurate, (3) Defendants falsely stated that they were eligible for the loan, and (4) Defendants knew inaccurate information would leave them exposed to civil and criminal penalties. Dkt. 46, ¶¶ 40–49. Notwithstanding these mis(representations), as described above, Defendants well-knew they were ineligible for a loan because Shady Canyon was a private club that restricts membership for reasons other than capacity and did not apply for a PPP loan due to economic necessity. Dkt. 46, ¶¶ 66–72. The individual defendants are sophisticated businesspeople responsible for effectively operating Shady Canyon and deciding to apply for the loan. *See* Dkt. 46, ¶¶ 40–41; 43; 45; 58. Shady Canyon could not and should not take government loan money without a thorough review of its legality. Dkt. 46, ¶¶ 28–38. At the least, the foregoing reflects reckless disregard and "support[s] an inference of scienter based on the circumstances." *1850 Bryant Land LLC*, 2023 WL 4297585, at * 5.

With respect to Shady Canyon's CEO and CFO, sophisticated business executives, recklessness, at a minimum, is met. As CEO and CFO of Shady Canyon when approving the loan applications, they "had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to . . . disclos[e] such facts." *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984).

In sum, the FAC adequately alleges the "the who, what, when, where, and how" of the purportedly false statements made to obtain the $1,689,200 PPP loan.

*Miller*, 2022 WL 18397530, at *7. The pleading standard should be relaxed here where Defendants include a corporate entity and its officers who are in unique possession of certain facts including their full PPP loan application and forgiveness materials, and can more easily conceal fraud. *See E&E Co., Ltd.*, 429 F. App'x at 633.

**F. The FAC States a Claim Against Both Sunshine and Christy**

Defendants wrongly argue that "but for identifying" Individual Defendants Sunshine and Christy, "the FAC does not plead specific facts to meet the heightened 9(b) standard required to plead the serious claim of fraud against these individuals." Defendants' Motion to Dismiss, pg. 28. However, the FAC alleges that Sunshine and Christy were the Shady Canyon executives that authorized the submission of the false and fraudulent PPP loan application, and that Sunshine and Christy were aware (or should have been aware) that Shady Canyon's PPP loan application was false and fraudulent. Dkt. 46, ¶¶ 3; 4; 40; 41; 43; 45; 58. The FAC therefore properly "inform[s] each defendant separately of the allegations surrounding his alleged participation in the fraud," and "identif[ies] the role of each defendant in the alleged fraudulent scheme." *Corinthian Colls.*, 655 F.3d at 997–98. The FAC's claims against Sunshine and Christy should not be dismissed.

**G. The Two New Causes of Action in the FAC are Properly Pled**

Defendants first argue that the FAC's second cause of action under the FCA should be dismissed. However, they advance no support for this argument other than simply stating that this claim should be dismissed for the same reasons that the FAC's first cause of action under the FCA should be dismissed. Defendants' Motion to Dismiss, pg. 29. Because, as explained above, the public disclosure bar does not apply and the FAC properly pleads a fraudulent claim, the FAC's second cause of action under the FCA should not be dismissed.

Defendants next argue that Plaintiff's claim for unjust enrichment must be dismissed because a *qui tam* relator "does not have standing to bring common law claims for unjust enrichment." Defendants' Motion to Dismiss, pg. 29. However, Defendants cite no case law in support of this proposition. The Court should not dismiss the FAC's claim for unjust enrichment.

**H. Any Dismissal Should be with Leave to Amend**

For the reasons above, the Court should deny Defendants' Motion in its entirety. However, should the Court find any pleading defect, it should grant Plaintiff leave to amend its FAC. Rule 15 requires that leave to amend "shall be freely given," and the Ninth Circuit has emphasized that this must be applied "with extreme liberality" towards amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (reversing denial of leave to replead, even after "three bites at the apple"). Further, "prejudice is the touchstone of the inquiry under rule 15(a)," *id.* at 1052, and Defendants make no such showing in their motion.

**V. CONCLUSION**

For the reasons discussed above, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss the First Amended Complaint. To the extent this Court disagrees, Plaintiff respectfully requests an opportunity to amend to cure any deficiency.

DATED: September 29, 2025

*s/ Charles F. Dender*

Charles F. Dender (admitted *pro hac vice*)
Madeline Harding (*pro hac vice* forthcoming)
Mollie Weiss (*pro hac vice* forthcoming)
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
cdender@dicellolevitt.com
mharding@dicellolevitt.com
mweiss@dicellolevitt.com

Kristen L. Nelson (SBN 269318)
**HECHT PARTNERS LLP**
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Tel.: (646) 502-9515
knelson@hechtpartners.com

*Attorneys for Plaintiff Relator LLC*

**L.R. 11-6.2. Certificate of Compliance**

The undersigned, counsel of record for Relator LLC, certifies that this brief contains 5,789 words, which complies with the word limit of L.R. 11-6.1.

DATED: September 29, 2025

*s/ Charles F. Dender*

Charles F. Dender (admitted *pro hac vice*)
Madeline Harding (*pro hac vice* forthcoming)
Mollie Weiss (*pro hac vice* forthcoming)
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel.: (646) 933-1000
cdender@dicellolevitt.com
mharding@dicellolevitt.com
mweiss@dicellolevitt.com

Kristen L. Nelson (SBN 269318)
**HECHT PARTNERS LLP**
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Tel.: (646) 502-9515
knelson@hechtpartners.com

*Attorneys for Plaintiff Relator LLC*